# BALTIMORE CITY COURT

Filed September 3, 1889.

## THE BALTIMORE AND HARFORD TURNPIKE COMPANY
## VS.
## ISAAC H. PEDDICORD.

*Wm. H. Dawson* for plaintiff.

*Fielder C. Slingluff* for defendant.

STEWART, J.—

There are three suits between the same parties. The first was instituted to recover the sum of $100 for toll alleged to be due by the defendant to the plaintiff for the usage of its road. It appears that under an agreement between the parties, the defendant was to pay the sum of $25 per month for the use of the road by his teams; and under this agreement there was due on the 20th of November, 1888, the sum of $75. During the month following the plaintiff gave notice to the defendant that the agreement entered into would be rescinded on the 12th of December, 1888, and that thereafter he would be charged toll according to the scale of prices laid down in its charter. The Court thinks that the agreement, if valid for any purpose, being a monthly one, it was competent for the plaintiff to terminate it at the end of any month, but not at any other period, and this appears to be the view taken by the justice who tried the case, who rendered judgment for the sum of $75, due as above stated on the 20th of November, 1888.

The defendant, however, raises a preliminary question whether it is competent for the plaintiff to bring suit against him, because of a violation of, or non-compliance with, certain provisions required in its charter. The objections are two in number. The first is that the law requires (1815, Chap. 17, Sec. 7) that the road shall be 60 feet wide, of which 20 feet, at least, shall be an artificial road; but it seems that subsequent to the charter a supplemental act was passed (1818, Chap. 50) investing the company with all the rights and privileges of the Washington and Baltimore Turnpike Company, incorporated by the Act of 1812, Chapter 78, to be subject to the same penalties, governed by the like regulations, entitled to the same tolls, and every clause and provision of said act to apply to the road contemplated so far as the same are applicable.

Under this latter act, the requirement (Sec. 13) is that the company shall lay out a road, 60 feet wide, 18 feet at least in breadth to be made an artificial road, which shall be made solid, durable and even to the surface, a sufficient depth to secure a good foundation; the road to be faced with gravel or stone pounded, or other small hard substance, in such manner as to secure a firm, and as near as the materials will reasonably admit, an even surface, and so nearly level in its progress as that it shall in no place rise or fall, more than will form an angle of four degrees with an horizontal line, and shall forever maintain and keep the said road in the same good order and repair.

The second objection is, that in several instances the grade of the road is greater than will form an angle of four degrees with an horizontal line.

Mr. John W. Disney testified, that in February, 1889, he surveyed the road from North avenue to within two miles of Belair, with a view of ascertaining the grades of the road, and the width of the metaled portion of the road bed; he made sixteen measurements and found that the grades some distance from the city were not in conformity with the requirements of the charter, especially at the 16-mile hill, at Guyton's hill and near the 18-mile stone—near the city, the inequalities do not appear to be great, and the first that occurs near the 4-mile stone, being hardly perceptible. The metaled bed of the road, in the lower end, near the city, was about 18 feet wide, and

it continued of that width to Hall's Springs, but farther out it became narrower, in some places as low as 14 feet, and at the third toll gate it was only 12 feet wide.

Assuming that the defects exist, to which the attention of the Court is directed, is it possible that it can enter into the enquiry, at this late day, as to whether the plaintiff has the right to collect tolls or not?

The 15th section of the charter required that as soon as the company shall have perfected five miles of the road, notice shall be given to the Governor, who shall appoint three skillful and judicious persons to view and examine the same, and report to him in writing, whether the said road is so far executed in a masterly and workman-like manner, according to the true intent and meaning of the law, when, if their report be in the affirmative, the Governor shall, by license, under his hand and the seal of State, permit and suffer the company to erect gates or turnpikes and collect tolls.

One witness, France, said that he had known tolls to be collected from those using the road for more than fifty years, and this Court must presume from the length of time during which the road has been used and tolls collected, that the Governor and the persons appointed by him to view and report upon the road performed their duty, and independent of this legal presumption, the evidence shows that the portion of the road involved in this suit conforms to the requirements of the law.

It is not the province of the Court, in an action of this kind, to review the action of the Governor in granting a license to the company, under the seal of the State, to erect gates and collect tolls. In a writ of *quo warranto*, or other proper proceeding to vacate the charter of the company, such question might be raised.

The company then having the right to collect toll this Court will affirm the judgment of the justice in favor of the plaintiff for $75; the plaintiff to pay the costs incurred in this Court on appeal.

In the second case, the suit was for a penalty, for not allowing the wagons used by the defendant to be weighed, as required by the 17th Section of the law. The gatekeeper of the plaintiff, McLaughlin, requested the defendant's driver to place the teams upon the scales provided for the purpose; but he refused this reasonable request, and in his refusal he was justified by the defendant, who told the gatekeeper that he could not allow his wagon to be weighed. There can be no excuse for violating the plain provisions of the law, and the judgment of the justice, which was in favor of the defendant, will be reversed, and judgment entered in favor of the plaintiff for five dollars and costs.

In the third case the suit was for four times the customary tolls charged upon the wagons of the defendant from 12th December to 22nd December, 1888, because of the excess of weight over that allowed to wagons having tires of four inches in width. The Court is satisfied that no claim can be made for any portion of the month, previous to 20th December, as in the former part of this opinion, it is set forth that the agreement of $25 per month did not terminate before that day, and it would be inequitable to allow the plaintiff to charge more in the form of a penalty than the parties mutually agreed should be full compensation. There is no evidence that the road was used by the defendant for the remaining two days embraced in this claim. The judgment of the justice will therefore be reversed, and judgment entered for the defendant, with costs.